UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Civil Action Number:  6:17-cv-01917-RBD-GJK

JOEL PRICE,

      Plaintiff,

vs.

PRIME GROUP HOLDINGS, LLC
d/b/a Prime Storage Group
and www.primestoragegroup.com,

      Defendant.

---

## AMENDED COMPLAINT

---

COMES NOW Plaintiff Joel Price ("Plaintiff"), by and through his undersigned counsel, and hereby files this Amended Complaint and sues Defendant Prime Group Holdings, LLC for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

### INTRODUCTORY STATEMENT

1.     Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Prime Group Holdings, LLC's business.

2.      Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

3.      When business owners do not take steps necessary to notice people of their businesses limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4.      This case arises out of the fact that Defendant Prime Group Holdings, LLC has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5.      Defendant Prime Group Holdings, LLC (also referenced as "Defendant") owns and operates places of public accommodation which are self-storage facilities under the brand name "Prime Storage Group." Prime Storage Group self-storage facilities offer for sale to the public affordable self-storage units, which are heretofore referenced as "goods and services," "Prime Storage Group self-storage units," "self-storage facilities, and/or "self-storage units."

6.      This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website) so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendant

effectively and timely such that their access to Defendant's places of public accommodation (which are self-storage facilities) are not impeded; as such impediment has rendered Defendant's physical places of accommodation not fully accessible to the visually impaired.

## JURISDICTION & VENUE

7.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

8.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, several of Defendant's self-storage facilities are located in the district.

9.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

**Joel Price**

10.     Plaintiff Joel Price (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the state of Florida, is *sui juris*, is disabled as defined by the ADA.

11.     Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Therefore, Plaintiff is substantially limited

in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

12.     Due to his disabilities, the Plaintiff requires the use and accompaniment of a service animal, as his service animal is a trained seeing-eye dog.   Plaintiff's requirement for use of a service animal is defined by 28 C.F.R. §36.104 and Florida Statue §413.08(1)(d).

13.     Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and  websites located therein.

**Prime Group Holdings, LLC**

14.     Defendant Prime Group Holdings, LLC ("Defendant") is the owner and operator of a chain of self-storage facilities under the brand name "Prime Storage Group." The Defendant invests, through its subsidiaries in self-storage and other related properties.   Defendant owns and/or operates the brand "Prime Storage Group" self-storage facilities around the United States.

## FACTS

15.     Plaintiff's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

16.     At all times material hereto, Defendant Prime Group Holdings, LLC was (and is) an organization which owns and operates a chain of self-storage facilities under the brand name "Prime Storage Group," each Prime Storage Group self-storage facility is open to the public. As the owner and operator of self-storage facilities, Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a

private entity which owns and/or operates an "other service establishment," 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).

17.     The Defendant controls, maintains, and/or operates a  collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.primestoragegroup.com ("Website").

18.     Defendant's Website is an electronic storefront and business permits the public to obtain information on Prime Storage Group self-storage units and amenities at each location, information on self-storage facility policies, and other information the Defendant seeks to communicate to the public. From the Website, the public can learn about all the various aspects of their self-self-storage units (e.g., size, rental rate, temperature controlled, drive up), access facility hours of operation, and pay their rental fee online. Through its business structure (which includes its Website), Defendant is statutorily required to provide auxiliary aids and services for the disabled.

19.     For all of the reasons as delineated herein, clearly, the Website is an integral part of the goods and services offered by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(F) of the ADA[1].

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

20.     If the Defendant offers a Website, the Defendant must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

21.     At all times material hereto, Defendant Prime Group Holdings, LLC was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public as part of their Place of Public Accommodation, Defendant (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).  As such, Defendant has subjected itself and the Website it has created and maintains, to the Americans with Disabilities Act ("ADA").

22.     Plaintiff is a customer who is interested in renting self-self-storage units such as Prime Storage Group's self-storage units which are offered through the Defendant's Prime Storage Group facilities' physical locations, particularly as offered in the Prime Storage Group self-storage facility located at 1759 Huntington Lane, Rockledge, Florida 32955.

23.     Plaintiff had called the Defendant's Prime Storage Group self-storage facility (number obtained through a Google search) to inquire about the various types and sizes of self-self-storage units available at the Prime Storage Group self-storage facility. However, Defendant's representative failed to fully assist Plaintiff and referred Plaintiff to its Website.

24.     Following communications with Defendant's representative through Defendant's customer service number, during the month of October 2017, Plaintiff attempted on several occasions to utilize Defendant's Website to educate himself as to the

Prime Storage Group self-storage units available with the intent then going to one of Prime Storage Group's self-storage facility locations to rent a self-storage unit.

25. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

26. Defendant's Website lacks accommodations necessary to allow visually impaired individuals who use screen reader software access to the Website, prompting information to locate and accurately fill-out online forms and to browse through Prime Storage Group self-storage units for the purposes of reserving Prime Storage Group self-self-storage units at a Prime Storage Group self-storage facility.

27. The Plaintiff attempted to locate an ***Accessibility Notice***[2] which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with the Defendant.

28. The fact that Plaintiff could not communicate with Defendant left him excluded from accessing Defendant's physical self-storage facility locations, and left Plaintiff with the feeling of segregation, rejection, and isolation, as Plaintiff was unable to participate in the same manner as provided to the public.

29. The Plaintiff's inability to access and use accessible auxiliary aids and services has impaired, obstructed, hindered, and impeded Plaintiff's ability to enjoy the shopping experience for goods and services offered by Defendant's business at Defendant's locations. Plaintiff's inability to enjoy and learn about Defendant's Prime

---

[2] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

Storage Group self-storage units resulted in a *virtual barrier* which has resulted in a *concrete barrier* to assess Defendant's physical storage locations and precluded Plaintiff's enjoyment of and access to Defendant's goods and services. Plaintiff's inability to enjoy Defendant's self-storage options prior to entering Defendant's self-storage facilities (physical locations) has hindered, impeded and inhibited Plaintiff's entry to Defendant's self-storage facilities. Plaintiff has missed out on purchasing and enjoying Defendant's goods and services, and as such, Plaintiff has suffered particularized harm and an injury in fact. Because Plaintiff cannot communicate with Defendant, Plaintiff has not had access to the selection of self-storage units Defendant offers to the public.

30.    Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with the Defendant in order to obtain access to Defendant's physical self-storage facility locations in order to participate in the goods and services offered at Defendant's Prime Storage Group self-storage facilities. Plaintiff's inability to communicate with/comprehend Defendant's business effectively has impeded Plaintiff's ability to patronize Defendant's physical self-storage facility locations. As such, the Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

31.    On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

32.     On information and belief, Defendant has not instituted an Effective Communications Committee to insure full and equal use of its Auxiliary Aids and Services  by individuals with disabilities.

33.     On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its Auxiliary Aids and Services  by individuals with disabilities.

34.     On information and belief, Defendant has not instituted an Auxiliary Aids and Services Accessibility User Testing Group to insure full and equal use of the Defendant's Auxiliary Aids and Services by individuals with disabilities.

35.     On information and belief, Defendant has not instituted an Automated Accessibility Testing program.

36.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

37.     On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have the www.primestoragegroup.com website, Applications, and Digital Assets accessible to the visually impaired community.

38.     On information and belief, Defendant does not have an Axillary Aids and Services Accessibility Policy.

39.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Axillary Aids and

Services.

40.     On information and belief, Defendant's Auxiliary Aids and Services do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[3].

41.     On information and belief, Defendant has not offered any other credible from of Auxiliary Aids and Services other than its Website.

42.     Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its business.

43.     All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

44.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites, such as the www.primestoragegroup.com website.[4]

45.     On information and belief, the Defendant is aware of the common access barriers and barriers to effective communication within its Auxiliary Aids and Services which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

---

[3] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

[4] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

46.    On information and belief, Defendant is aware of need to provide full access to all visitors to its www.primestoragegroup.com website.[5]

47.    Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

48.    Such barriers result in punishment and isolation of blind and low vision individuals from the rest of society.

49.    According to the National Federation for the Blind[6], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 469,300 individuals with visual disabilities living within the state of Florida[7].

50.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Plaintiff's inability to shop for himself.

51.    Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

52.    Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

---

[5] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/), (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )
[6] Statistics for 2015, see  https://nfb.org/blindness-statistics
[7] 469,300 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2014; see https://nfb.org/blindness-statistics

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

53.     Plaintiff Joel Price re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-52 above.

### Requirement for Effective Communication

54.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

55.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

56.     Section   28   C.F.R.   §36.303(c)   specifically   states   that   public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure  effective  communication  with individuals with  disabilities.  "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

57.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

58.    Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

59.    By virtue of the fact that Defendant's Prime Storage Group self-storage facilities are open to the public, each self-storage facility is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §12181(7)(F).  The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

60.    The virtual barrier to access is just as real as a physical barrier to access, for without information as to the goods and services offered and ability to investigate and choose a self-storage facility, the visually impaired have no access to the goods and services of that self-storage facility, which is a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

61.    Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[8]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

---

[8] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

62.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Andres Gomez v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

63.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

64.     The www.instantstorage.com website is a *Place of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(F) as an integral part of Defendant's self-storage facilities by providing the public information on the various locations of Defendant's self-storage facilities, and offers the public the ability to be educated as to the line of self-storage units for rent available on the Website.

65.     As delineated above and pursuant to 42 U.S.C. §§s 12181(7)(F), Defendant is a *Public Accommodation* under the ADA because it because it owns and/or

operates the www.primestoragegroup.com website which is defined within §12181(7)(F) and is subject to the ADA.

66.     In addition, Defendant's representatives within its self-storage facility locations have referred customers to Defendant's Website for additional information, as the Website provides information regarding types/sizes of storage units and amenities of each facility, such that the Website is an integral part of the public's needs with respect to Defendant's business.

67.     By Defendant's representatives referring the public /visually impaired individuals to its Website for reference to information on goods and services instead of providing such information at the physical self-storage facility locations, the Website has been rendered an integral part of Defendant's physical business locations. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as the Plaintiff) from fully accessing the Defendant's physical business locations.

68.     It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

69.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of

accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[9] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[10] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

70.    Recent case law supports that the intangible barriers presented within Defendant's Website are violative of the ADA.  In rendering his decision that Winn Dixie Stores, Inc.'s website contained barriers to access which are prohibited by the ADA[11], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 (**emphasis added**).

---

[9] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.
[10] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services
[11] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

71.     At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services.  Plaintiff's injury is real, has occurred and is continuing. Plaintiff's injury will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

72.     Recent Case law supports the Plaintiffs position, that companies which that have not fully updated their websites so that they are accessible to visually impaired individuals are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

73.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

74.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that

making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

75.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

76.     As a result of the inaccessibility of Defendant's physical places of business precipitated by barriers within its Website, visually impaired individuals are denied full and equal access to Defendant's physical self-storage facility locations as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

77.     Types of website programming errors include (but are not limited to) *(i) Programming Error Types* ("PETs"), which are easily identifiable and correctable,  *(ii) Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible, and *(iii)* Design Errors ( DE's)  that create empty headings and text fields that create confusion for a user that rely on the 'TAB' key to navigate a web page.

78.     A sampling review of just part of the Defendant's Website revealed that the Website is not functional for users who are visually impaired.  The Website contains

several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

79.     Further, the Defendant's Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

80.     More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

81.     Further, the Website does not offer include the universal symbol for the disabled[12] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

82.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

---

[12] , or HTML "Accessibility" link for those individuals who are visually impaired

83.     The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Auxiliary Aids and Services. These violations within Defendant's Website are ongoing.

**Violations of the ADA**

84.     As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

85.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Joel Price injunctive relief; including an order to:

a) Require Defendant Prime Group Holdings, LLC to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.primestoragegroup.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b) Require Defendant Prime Group Holdings, LLC to take the necessary steps to make the Website  readily accessible to and usable by visually impaired users, and during that time period prior to the www.primestoragegroup.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant Prime Group Holdings, LLC to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Prime Storage Group self-storage facilities (locations) and becoming informed of and renting Prime Storage Group self-storage units online. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from purchasing such goods and services made available to the public through Defendant's Website and through Defendant's physical self-storage facility locations.

86.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Prime Group Holdings, LLC.

<u>**DEMAND FOR RELIEF**</u>

**WHEREFORE,** Plaintiff Joel Price hereby demands judgment against Defendant Prime Group Holdings, LLC and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant to update its www.primestoragegroup.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively

communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant Prime Group Holdings, LLC to clearly display the universal disabled logo[13] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.primestoragegroup.com website;

d) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

e) The Court enter an order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f) The Court enter an Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such

---

[13] 

reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

g) The Court enter an Order directing Defendant to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

h) The Court award damages in an amount to be determined at trial;

i) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

j) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 15th day of January, 2018

Respectfully submitted,

 s/Scott Dinin
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of January, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I will serve the foregoing with summons to Defendant Prime Group Holdings, LLC. Further, I certify that I will send the foregoing via email to  counsel for the dismissed Defendant Prime Group, who has not yet entered an appearance as follows:

CHRIS KRASAZ, EZQ.
email: CKARSAZ@KARSAZ-LAW.COM,
enewmark@karsaz-law.com
*Counsel for Defendant Prime Group*

*s/ Scott Dinin*